# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

CARLOS FRANCO,                            )   1:09-cv-00325 OWW MJS HC
                                          )
                  Petitioner,             )   FINDINGS AND RECOMMENDATION TO
                                          )   DENY RESPONDENT'S MOTION TO
        v.                                )   DISMISS PETITION
                                          )   (Doc. 36)
                                          )
NEIL H. ADLER, Warden,                    )
                                          )
                                          )
                  Respondent.             )
_____          )

        Plaintiff is a federal prisoner proceeding with a petition for writ of habeas corpus
pursuant to 28 U.S.C. § 2241. The matter has been referred to the Magistrate Judge pursuant
to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304. Pending before the Court is
Respondent's motion to dismiss the petition filed on July 26, 2010. On January 15, 2010,
Petitioner filed documents denominated a traverse to a nearly identical motion to dismiss. The
Court shall consider the latter in this order.

I.      **JURISDICTION**

        A.      **Subject Matter Jurisdiction**

        Relief by way of a writ of habeas corpus extends to a prisoner in custody under the
authority of the United States who shows that the custody violates the Constitution, laws, or
treaties of the United States. 28 U.S.C. § 2241(c)(3). Although a federal prisoner who
challenges the validity or constitutionality of his conviction must file a petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2255, a federal prisoner challenging the manner, location, or conditions of the execution of a sentence must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. Hernandez v. Campbell, 204 F.3d 861, 864-65 (9th Cir. 2000).

Petitioner's claims arise out of a disciplinary hearing conducted on July 17, 2008, in which the discipline hearing officer ("DHO") found that Petitioner committed the prohibited act: Possession or Introduction of a Hazardous Tool, i.e., a cellular telephone. (Mot. to Dismiss, Ex. A, ECF No. 22.)  Respondent sanctioned Petitioner with a loss of forty days of good conduct time, imposed thirty days of disciplinary segregation, and denied Petitioner telephone privileges for one year. (Id.) Further, Respondent removed Petitioner from a Residential Drug Abuse Program ("RDAP") which, if completed,  would have provided Petitioner the right to early release.

Here, Petitioner alleges that the Bureau of Prisons' regulation categorically expelling inmates from the RDAP after being found guilty of a "100 level" (i.e., greatest severity) disciplinary violation does not comply with the Administrative Procedures Act ("APA"). 5 U.S.C. § 706(2)(A); Crickon v. Thomas, 579 F.3d 978 (9th Cir. 2009). Petitioner further alleges that the disciplinary conduct in question did not qualify as a 100 level disciplinary violation.

If a constitutional violation has resulted in the loss of time credits, it affects the duration of a sentence and it may be remedied by way of a petition for writ of habeas corpus. Young v. Kenny, 907 F.2d 874, 876-78 (9th Cir. 1990).  Accordingly, the Court concludes that it has subject matter jurisdiction over the petition.

**B.     Jurisdiction over the Person**

Title 28 U.S.C. § 2241(a) provides that writs of habeas corpus may be granted by the district courts "within their respective jurisdictions." A writ of habeas corpus operates not upon the prisoner, but upon the prisoner's custodian. Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 494-495 (1973). A petitioner filing a petition for writ of habeas corpus under § 2241 must file the petition in the judicial district of the Petitioner's custodian. Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990). The warden of the penitentiary where a prisoner is confined constitutes the custodian who must be named in the petition, and the

1   petition must be filed in the district of confinement. Id.; Rumsfeld v. Padilla, 542 U.S. 426,

2   446-47 (2004). It is sufficient if the custodian is in the territorial jurisdiction of the court at the

3   time the petition is filed; transfer of the petitioner thereafter does not defeat personal

4   jurisdiction that has once been properly established. Ahrens v. Clark, 335 U.S. 188, 193, 68

5   S. Ct. 1443, 92 L. Ed. 1898 (1948), overruled on other grounds in Braden, 410 U.S. at 493,

6   citing Mitsuye Endo, 323 U.S. 283, 305 (1944); Francis v. Rison, 894 F.2d 353, 354 (9th Cir.

7   1990). A failure to name and serve the custodian deprives the Court of personal jurisdiction.

8   Johnson v. Reilly, 349 F.3d 1149, 1153 (9th Cir. 2003).

9       Here, at all pertinent times, Petitioner was incarcerated at the Taft Correctional

10  Institution (TCI), which is located within the Eastern District of California. Petitioner named Neil

11  H. Adler, the Warden of TCI, as Respondent.

12      Accordingly, the Court concludes that it has personal jurisdiction over the custodian.

13  **II.     PROCEDURAL GROUNDS FOR MOTION TO DISMISS**

14      Respondent has filed a motion to dismiss the petition for failure to state a claim upon

15  which relief can be granted pursuant to Fed. R. Civ. Proc. 12(b)(6). (Mot. to Dismiss, ECF No.

16  36.) Along with the motion, Respondent has submitted various documents, including the

17  DHO's report, the original incident report,  an advisement of rights signed by Petitioner, various

18  regulations and program statements, and a signed declaration. (Mot. to Dismiss, Exs. A-E,

19  ECF No. 36.)

20      Review of  Respondent's arguments and exhibits leaves it clear that Respondent is, in

21  essence, arguing the **merits** of Petitioner's claims, not alleging a  procedural deficiency such

22  as lack of exhaustion or federal jurisdiction.

23      Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a

24  petition if it "plainly appears from the petition and any attached exhibits that the petitioner is

25  not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254

26

27

28

Cases.[1] The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus, a respondent can file a motion to dismiss after the Court orders a response, and the Court should use Rule 4 standards to review the motion. See Hillery, 533 F. Supp. at 1194 & n. 12.

As discussed above, the Rules Governing Section 2254 Cases do not expressly provide for motion practice; rather, such motion practice must be inferred from the structure of the rules themselves. Hillery, 533 F.Supp. at 1195. For example, Rule 12 provides as follows:

> The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.

Rule 12 of the Rules Governing Section 2254 Cases. Because of the peculiar and unique nature of habeas proceedings, as a general rule, neither motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) nor summary judgment motions under Rule 56 are particularly appropriate. Given the nature of a habeas corpus petition, Anderson v. Butler, 886 F.2d 111, 113 (5th Cir. 1989) (modern habeas corpus procedure has the same function as an ordinary appeal); O'Neal v. McAninch, 513 U.S. 432, 442 (1995) (federal court's function in habeas corpus proceedings is to "review errors in state criminal trials" (emphasis omitted)), motions for summary judgment are unnecessary because petitions may be decided immediately by the Court following submission of the pleadings provided no material issues of fact exist.

Similarly, a Rule 12(b)(6) motion attacking the sufficiency of the pleading in the petition does not comfortably fit within the habeas landscape either. As mentioned, the district court

---

[1]The Rules Governing Section 2254 Cases may be applied to petitions for writ of habeas corpus other than those brought under § 2254 at the Court's discretion. See, Rule 1 of the Rules Governing Section 2254 Cases; Fed. R. Civ. P 81(a)(4).

is already tasked with the responsibility to initially screen the petition for sufficiency pursuant to Rule 4 of the Rules Governing Section 2254 cases. Here, the Court's order requiring Respondent to file a response was issued only after the Court had undertaken its Rule 4 obligation. Thus, at that point, the Court had, by implication, already found the petition's pleadings sufficient to proceed. Premising a motion to dismiss on Rule 12(b)(6), as Respondent has done, is therefore redundant in that it essentially requests that the Court re-conduct a pleading examination already completed.

Although procedurally inappropriate, the Court is of the opinion that denying Respondent's motion to dismiss solely on narrow procedural grounds and then requiring an answer that would, in all likelihood, raise the same issue based on the same evidence, would be an inefficient use of the parties' time and the Court's resources. Instead, the Court will use its inherent power under the Rules Governing Section 2254 Cases to construe Respondent's motion as an answer on the merits and Petitioner's opposition as a traverse. (To Petitioner's credit, Petitioner filed a traverse, rather than an opposition, to the motion to dismiss.) So construing the filings, the Court would  then be in a position to rule on the merits of the petition without the need for further development of the record or additional briefing.

Such an approach is entirely consistent with the Rules Governing Section 2254 Cases. Historically, habeas practice provided only two dispositions for petitions: summary dismissal or a full hearing. Hillery, 533 F.Supp. at 1196. However, the drafters of the present Rules Governing Section 2254 cases believed that, in some instances, an intermediate process, through the device of an expanded record under Rule 7 might be advantageous. Id. "The purpose [of Rule 7] is to enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing…Authorizing expansion of the record will, hopefully, eliminate some unnecessary hearings." Advisory Committee Note to Rule 7.

However, while the Court would normally be willing to construe Respondent's motion to dismiss as an answer on the merits, Respondent's failure to address Petitioner's claims and supply necessary information make it impossible for the Court to reach and resolve all issues.

III.   **ANALYSIS OF CLAIMS**

Petitioner presents two claims in his federal habeas petition. In his first claim, Petitioner contests the validity of the BOP's regulations regarding expulsion from the RDAP. Second, Petitioner questions whether his conduct violated the code section for possession or use of a hazardous tool. The Court also will address claims concerning due process at the disciplinary hearing.

A.    **Petitioner's Administrative Procedure Act Claim**

"The APA provides that a 'reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.'" Crickon, 579 F.3d at 982 (citing 5 U.S.C. § 706(2)(A)). "Under the arbitrary and capricious standard, our review of the BOP regulation is 'highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision.'" Id.

"A reasonable basis exists where the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made." Id. (citing Arrington v. Daniels, 516 F.3d 1106, 1112 (9th Cir. 2008)). However, the reviewing court may "not supply a reasoned basis for the agency's action that the agency itself has not given." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins., 463 U.S. 29, 43 (1983). Nor should we "infer an agency's reasoning from mere silence." Arrington, 516 F.3d at 1112 "However, '[e]ven when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned.'" Crickon, 579 F.3d at 982 (citing Alaska Dept. of Environmental Conservation v. E.P.A., 540 U.S. 461, 497 (2004)). But later attempts to explain the agency's action, such as in subsequent litigation, cannot substitute for the agency's own articulation of the decision. Fed. Power Comm'n v. Texaco, Inc., 417 U.S. 380, 397 (1974) ("[W]e cannot accept appellate counsel's post hoc rationalizations for agency action; for an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself.").

Here, Petitioner argues that the BOP failed to articulate a reasonable basis for the rule

excluding prisoners found guilty of a 100-series disciplinary violation from early release eligibility under the RDAP and that the final rule is therefore invalid under the APA.  Such a claim requires review of the administrative record surrounding the enactment of 28 C.F.R. § 550.56(d)(2)(iii) (2008). Other challenges to the validity of the RDAP under the Administrative Procedure Act have been successful. In Arrington, the Ninth Circuit held that the 2000 Bureau of Prison regulation creating a categorical exclusion for individuals convicted of offenses involving the possession of firearms was invalid because the Bureau of Prisons did not give a rationale for its action during the administrative process. Arrington, 516 F.3d at 1113. In Crickon, the Ninth Circuit came to a similar conclusion with regard to precluding inmates with certain prior offenses from the RDAP. Crickon 579 F.3d at 988-89.

Respondent has failed to address this claim adequately for the court to make a determination on it. The majority of the motion to dismiss focuses on procedural due process issues regarding the disciplinary hearing. Since Petitioner raised no such claim, the bulk of the motion to dismiss is irrelevant to the issues presented. Further, in attempting to address this issue, Respondent provides only BOP program statements setting forth the relevant regulations and a declaration from a prison official regarding the RDAP policy. Such documents do not provide the relevant legislative history and analysis necessary to enable the Court to address Petitioner's APA claim. Accordingly, the Court recommends the motion to dismiss be denied as to this claim and Respondent be required to submit further briefing on this issue.

## B.   Petitioner's Conduct Qualifies as a Greatest Severity Violation

Petitioner's second claim asserts that BOP disciplinary regulations outline other less severe violations for improper use of phones and  he should not have been found guilty of a violation of BOP Code 108 for possession of a hazardous tool. A Code 108 violation is defined as:

> Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade).

28 C.F.R. § 541.13, Table 3. Petitioner correctly points out that other violations refer specifically to improper use of phones. For example, a Code 197 violation is for the "[u]se of the telephone to further criminal activity," and a Code 297 violation is for the "[u]se of the telephone for abuses other than criminal activity (e.g., circumventing telephone monitoring procedures, possession and/or use of another inmate's PIN number; third-party calling; third-party billing; using credit card numbers to place telephone calls, conference calling; talking in code)." Id.

"Due process requires fair notice of what conduct is prohibited before a sanction can be imposed." Newell v. Sauser, 79 F.3d 115, 117 (9th Cir. 1996) (citing Grayned v. City of Rockford, 408 U.S. 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972)). While "[d]ue process undoubtedly requires certain minimal standards of specificity in prison regulations," "the degree of specificity required of such regulations is [not] as strict in every instance as that required of ordinary criminal sanctions." Meyers v. Alldredge, 492 F.2d 296, 310 (3d Cir. 1974); see also Adams v. Gunnell, 729 F.2d 362, 369-70 (5th Cir. 1984). In the prison context, "'the law requires less in the way of notice, and places a greater burden on the individual to make inquiry or ask permission before acting.'" Meyers, 492 F.2d at 311 (quoting Landman v. Royster, 333 F.Supp. 621, 655-56 (E.D. Va. 1971)). Federal courts defer to prison authorities' interpretation of prison rules "unless fair notice was clearly lacking." Hadden v. Howard, 713 F.2d 1003, 1008 (3d Cir. 1974).

Under the circumstances here, fair notice was not clearly lacking. The BOP promulgated several regulations pertaining to telephone use. See 28 C.F.R. § 541.13, Table 3. While such regulations were created prior to the advent of small, affordable cell phones, the regulations clearly indicate that the improper use of phones could subject Petitioner to sanction. (Since Petitioner's violation, the BOP has amended the regulations to specifically include possession of cell phones as an example of a hazardous tool under Code 108. See 75 FR 76263.) That the regulation does not specifically define the level of severity of punishment for possession or use of a cell phone does not render it impermissibly vague. Code 108 was not drawn with such generality that Petitioner did not have fair notice that his

1  conduct could violate the rule. Code 108 prohibits the possession or use of tools that are likely

2  to be used in an escape or are hazardous to institutional security or safety. A unmonitored cell

3  phone could easily assist an inmate to communicate with others outside the prison for

4  purposes of planning an escape or to otherwise threaten the safety of prison personnel.

5  Because Code 108 was sufficient to satisfy the due process requirement of fair notice in the

6  prison context, habeas relief is unwarranted on this claim.[2]

7  **C.    Petitioner's Due Process Claim**

8  Petitioner did not appear to challenge a lack of due process at the disciplinary

9  proceeding in his petition. However, after Respondent filed his answer addressing due process

10 concerns, Petitioner, in his traverse, discusses how there was not sufficient evidence to find

11 him in violation of Code 108. Petitioner also provided a declaration from inmate Santiago

12 stating that only inmate Santiago was in possession of the phone. Accordingly, the court shall

13 address the merits of such claims.

14 Prisoners cannot be deprived of their constitutional rights entirely, but their rights may

15 be diminished by the needs and objectives of the institutional environment. Wolff v. McDonnell,

16 418 U.S. 539, 555 (1974). Prison disciplinary proceedings are not part of a criminal

17 prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. Id. at

18 556. Thus, a prisoner's due process rights are moderated by the "legitimate institutional

19 needs" of a prison. Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989), citing

20 Superintendent v. Hill, 472 U.S. 445, 454-455 (1984).

21 However, when a prison disciplinary proceeding may result in the loss of good time

22 credits, due process requires that the prisoner receive: (1) advance written notice of at least

23 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional

24 safety and correctional goals, to call witnesses and present documentary evidence in his

25 defense; and (3) a written statement by the fact-finder of the evidence relied on and the

26 _____

27 [2] It should also be noted that several other federal courts have upheld disciplinary infractions of Code 108 for possession or use of a cell phone. See e.g., United States v. Beason, 2011 U.S. Dist. LEXIS 10072, *17-27 (N.D. Va. 2011) (listing several decisions regarding violations for possession of a cell phone under Code 108.).

28

1    reasons for the disciplinary action. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567. In

2    addition, due process requires that the decision be supported by "some evidence." Hill, 472

3    U.S. at 455.

4          As mentioned, Petitioner presents an argument that there was insufficient evidence to

5    find him guilty of Possession of a Hazardous Tool. Petitioner does not contend that any

6    procedural safeguards were violated.  Thus, the Court shall only address the issue of whether

7    the decision was supported by some evidence.

8          On February 20, 2008, correctional officers conducted a search of the cell of inmate

9    Jonathan Santiago and discovered a red Samsung cellular telephone hidden in Santiago's

10   locker. Santiago was issued an incident report and placed in the Secure Housing Unit ("SHU").

11   Another inmate, Ariel Liriano-Blanco, was also implicated in the matter and placed in the SHU.

12   Two days later, while searching the property of Santiago and Liriano-Blanco, correctional

13   officers discovered two "SIM" cards hidden in the back of a mirror. The SIM cards contained

14   three telephone numbers. The phone numbers were cross-referenced with the numbers each

15   prisoner had listed in the Inmate Telephone System ("ITS"). The records indicated that the cell

16   phone was used to call five phone numbers that only appeared on Petitioner's approved

17   telephone list. (Mot. to Dismiss, Ex. A.)

18         On April 10, 2008, Petitioner received Incident Report #1720648, for a violation of Code

19   108, Possession of a Hazardous Tool (i.e., cellular phone). (Mot. to Dismiss, Ex. B.) On July

20   17, 2008, the disciplinary hearing was held before the DHO. (Mot. to Dismiss, Ex. A.)

21   Petitioner appeared at the hearing and denied the charging, stating, "I didn't call. The guy

22   called for me." (Id.) Petitioner requested no witnesses at the hearing, and none testified. (Id.)

23   After reviewing all of the evidence, the DHO found Petitioner guilty of committing the prohibited

24   act. The finding was based on the information submitted by the reporting employee as well as

25   documentary evidence consisting of a photograph of the recovered cellular phone, the

26   approved inmate phone list displaying five numbers found in the recovered SIM card, the ITS

27   search of specified phone numbers that revealed Petitioner was the only inmate with those five

28   numbers on his approved phone list, and Petitioner's own statement that he gave those

1    numbers to Santiago to call. (Id.)

2    The DHO summarized the primary evidence as follows:

3           First, the written report of SIS K. Sy which states that on 02-20-2008 at 1045
            hours, Officer J. Mize found a red "Samsung cellular telephone hidden under the
4           locker of [a] cubicle belong[ing] to Santiago, Jonathan…The SIM card was
            missing from the cell phone. Santiago was given an incident report and placed
5           in the SHU. Inmate Liriano, Ariel [Santiago's roommate]…[was also] placed in
            the SHU. On 02-22-2008, while searching Santiago and Liriano's property, Sy
6           found two SIM cards hidden in the back of a mirror with the writing "columbia"
            which is Santiago's nickname. The SIM cards revealed three telephone
7           numbers…The telephone numbers were forwarded to the Office of the Inspector
            General (OIG) for further investigation. On 04-10-2008, Sy received a copy of
8           the subpoena which contained various telephone numbers called by this cellular
            phone. These telephone numbers were cross-referenced with the Inmate
9           Telephone System (ITS) at the Taft Correctional Institution. Based on the
            information from the subpoenas, he determined you were in possession and
10          utilized the cell phone to call [five numbers]. These telephone numbers were not
            found on any other inmate's approved telephone list. Your possession of a cell
11          phone provides you with unmonitored phone calls.

12   (Mot. to Dismiss, Ex. A).

13   Based on the foregoing evidence, the DHO concluded as follows:

14          Any reasonable person can conclude that you used this telephone to call the
            above referenced numbers since they were on your approved phone list and not
15          any other inmates. For this reason that DHO has deemed your denials less than
            credible. Obviously, in order to call the number, you had to have possession of
16          the cellular telephone. A hazardous tool is one which possess [sic] a serious
            threat to the security of the institution. A cellular telephone does this due to it's
17          [sic] ability to provide the user with unmonitored calls that can be used to
            conduct drug trafficking, plan an escape, or numerous other illegal activities.

18
            Therefore, having considered all relevant evidence, the DHO finds the greater
19          weight of the evidence supports the finding that you committed the prohibited act
            of Possession, Manufacture, or Introduction of a Hazardous Tool, code 108."
20   (Id.)

21          As a result of the findings, the DHO assessed sanctions of 40 days good conduct

22   credits and 30 days of disciplinary segregation. (Doc. 17, Ex. A). The DHO explained the

23   reasons for the sanctions as follows:

24          "These sanctions are imposed in order to stress the seriousness of your actions
            and to punish you. A cell phone can be used to arrange an escape or an escape
25          attempt and it can be connected to the threat that illicit drugs pose to institutional
            security due to the inability to monitor phone calls. These pose a serious threat
26          to the security of the institution. The sanctions imposed are to cause you to
            refrain from committing this, or any other prohibited act in the future."
27   (Id.)

28          For all of the reasons contained in the DHO's report, "some evidence" exists to support

a finding that Petitioner had, at some point, possessed the cell phone in order to place at least five calls. Although Petitioner adamantly denies ever possessing the cell phone or placing the calls himself, the DHO found Petitioner's statements "less than credible." In so doing, the DHO based his finding of guilt on the circumstantial evidence that the SIM cards contained two numbers that only Petitioner had on his call list and on Petitioner's tacit admission that he knew Santiago had a cell phone and had asked Santiago to make the calls. See Hill, 472 U.S. at 455. The fact that the cell phone was not found in Petitioner's possession or that Petitioner was not directly observed using the phone does not negate a finding of guilt based on the weight of the circumstantial evidence discussed above. While Petitioner's argument that Santiago placed the calls instead of Petitioner is plausible, the circumstantial evidence is sufficient to meet the deferential "some evidence" standard required under Hill.

Accordingly, the Court finds no due process violation with regard to finding of the disciplinary proceeding at issue in this case.

## IV.    **RECOMMENDATION**

Petitioner is not entitled to relief  regarding his second claim, that his conduct does not violate BOP Code 108, or that the finding of the Disciplinary Hearing Officer violated his due process. Petitioner has not shown that he is entitled to relief pursuant to § 2241 on these claims, and this Court recommends that such claims be DISMISSED.

However, the Court concludes that Respondent has failed to establish that Petitioner is not entitled to relief on his claim that the expulsion provisions of the Residential Drug Abuse Program violate the Administrative Procedures Act. This Court therefore recommends that Respondent's motion to dismiss be DENIED.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen (14) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the

1   objections shall be served and filed within seven (7) days (plus three days if served by mail)

2   after service of the objections. The Court will then review the Magistrate Judge's ruling

3   pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections

4   within the specified time may waive the right to appeal the District Court's order. Martinez v.

5   Ylst, 951 F.2d 1153 (9th Cir. 1991).

6

7

8

9   IT IS SO ORDERED.

10  Dated:    March 1, 2011              /s/ *Michael J. Seng*
                                        UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

U.S. District Court
E. D. California

-13-