UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CARLOS FRANCO, | ) | 1:09-cv-00325 LJO MJS HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATION |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| | ) | (Doc. 47) |
| NEIL H. ADLER, Warden, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Plaintiff is a federal prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304.

**I.   JURISDICTION**

The Court has already determined that it has proper jurisdiction over the subject matter and parties to the petition for writ of habeas corpus. (See Findings & Recommendation, ECF No. 38.) Accordingly, the Court shall address the merits of the petition.

**II.   PROCEDURAL HISTORY**

Petitioner filed the instant petition for habeas corpus with the Court on February 23, 2009. The petition presents two claims. First, Petitioner contests the validity of the Bureau of Prison's ("BOP") regulations regarding expulsion from the Residential Drug Abuse Program ("RDAP"). Second, Petitioner challenged whether his conduct violated the code section for

possession or use of a hazardous tool.

Respondent filed a motion to dismiss, and the Court granted the motion in part, dismissing Petitioner's second claim for relief. The Court ordered Respondent to file an answer addressing the merits of Petitioner's first claim. Respondent filed an answer on May 9, 2011. Petitioner did not file a response to the answer.

### III. PETITIONER'S REMAINING CLAIM

Petitioner contends his automatic removal from the RDAP for a violation of the BOP Prohibition Acts Code ("PAC") section 108 was in violation of the Administrative Procedures Act ("APA"). Petitioner claims that the BOP has provided no rationale for its policy of removing from the RDAP inmates who have been found to have committed a PAC 100-level violation, of which PAC section 108 is one. As such, Petitioner contends that the BOP has violated section 706(2)(A) of the APA. 5 U.S.C. § 706(2)(A).

### IV. ANALYSIS

#### A. Statutory and Regulatory Framework

In 18 U.S.C. § 4042(a) Congress vested the BOP with broad authority for the "management and regulation of all Federal penal and correctional institutions." In 18 U.S.C. § 3621(b), Congress established a statutory mandate that the BOP "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse."[1] In § 3621(e) Congress specified:

> the [BOP] shall, subject to the availability of appropriations, provide residential substance abuse treatment (and make arrangements for appropriate aftercare) for all eligible prisoners ... with priority for such treatment accorded based on an eligible prisoner's proximity to release date.

The BOP regulations implementing the RDAP mandate in § 3621(e) are codified at 28 C.F.R. §§ 550.53-550.55.[2]

---

[1] Congress also vested the BOP with the discretion to reduce an inmate's term of imprisonment, by not more than one year, upon the successful completion of RDAP. 18 U.S.C. § 3621(e)(2).

[2] Current regulations were promulgated January 14, 2009, following notice and comment, and made effective March 16, 2009.

RDAP regulations that are relevant to this action relate to the criteria for expulsion from the program. Specifically, section 550.6(d) states:

> (d) *Withdrawal/expulsion.*
> (1) An inmate may withdraw voluntarily from the program.
> (2) The drug abuse treatment coordinator may remove an inmate from the program based upon disruptive behavior related to the program.  Ordinarily, staff shall provide the inmate with at least one warning prior to removal.  An inmate may not ordinarily be removed immediately without warning unless the inmate, pursuant to an incident report, is found by the DHO to have:
> (i) Used or possessed alcohol or drugs;
> (ii) Been violent or threatened violence against staff or another inmate; or
> <u>(iii) Committed a 100 level prohibited act.</u>

28 C.F.R. § 550.6(d) (emphasis added).

### B.     Relevant Facts

Petitioner was a federal prisoner incarcerated at Taft Correctional Institution in Taft, California. Petitioner alleges that he was wrongfully subjected to discipline pursuant to PAC section 108 following the discovery of a cellular telephone in the cubicle of a fellow inmate. On February 20, 2008, Officer J. Mize found a red Samsung cellular telephone hidden under a locker belonging to fellow inmate Santiago. (See Ex. B, Mot. to Dismiss.) A SIM card was subsequently found during a search of Santiago and another inmate's personal property. (Id.) The telephone and SIM card were forwarded to the Office of Inspector General ("OIG") for further investigation.  The OIG was able to identify telephone numbers called using the SIM card.  The OIG determined that five telephone numbers called were numbers exclusively located on Petitioner's approved call list.  (See Ex. B.) Based on this evidence, Petitioner was cited with violating PAC section 108 which prohibits "[p]ossession, manufacture, or introduction of a hazardous tool [including] tools most likely to be used in an escape or escape attempt..." (Id.)  Possession of a hazardous tool is an offense of the greatest severity due to the threat such items could be used for escape attempts and might pose a hazard to institutional security and personal safety. 28 C.F.R. § 541.13.

Petitioner appeared at a Disciplinary Hearing on  July 17, 2008.  (See Ex. B.)  At the hearing, the Disciplinary Hearing Officer held that there was sufficient evidence to support a

finding that Petitioner had violated PAC section 108 and imposed a punishment of: (1) 40 days disallowance of good conduct time; (2) 30 days disciplinary segregation; (3) and a one year loss of telephone privileges.  (Id.)

Of significance to the present petition, in light of the disciplinary violation, the BOP removed Petitioner from the RDAP and denied him one year of early release credit. Petitioner alleges that the Bureau of Prisons regulation categorically expelling  inmates from the RDAP for being found guilty of 100 level disciplinary violations does not comply with the Administrative Procedures Act ("APA"). 5 U.S.C. § 706(2)(A); Crickon v. Thomas, 579 F.3d 978 (9th Cir. 2009).

### C. Review under § 706

Under § 706 of the APA, "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." "The reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." § 706(2)(A). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983); California Trout v. FERC, 572 F.3d 1003, 1021 (9th Cir. 2009). Agency action is presumed to be valid if a reasonable basis exists for the agency decision. Sacora v. Thomas, 628 F.3d at 1068 (citing Crickon v. Thomas, 579 F.3d 978, 982 (9th Cir. 2009)).

"A reasonable basis exists where the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made. Although [a court] may uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned, [a court] may not infer an agency's reasoning from mere silence. Sacora, 628 F.3d at 1068 (quoting Arrington v. Daniels, 516 F.3d 1106, 1112 (9th Cir. 2008)). "Under the arbitrary and capricious standard, [a court's] review of the BOP regulation is 'highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis

exists for its decision." Crickon, 579 F.3d at 982 (quoting Northwest Ecosystem Alliance v. U.S. Fish and Wildlife Service, 475 F.3d 1136, 1140 (9th Cir. 2007)).

### D.   Administrative History of Relevant BOP Regulations

On January 7, 1994 the BOP issued proposed regulations regarding drug abuse treatment programs. 59 Fed. Reg. 1240 (Jan. 7, 1994) (to be codified at 28 C.F.R. pt. 550). Proposed regulation section 550.53 specified "requirements for participation in an institution's residential and non-residential program..." Id. Section 550.53(d) of the proposed requirements provided that "[a]n inmate may voluntarily withdraw from a residential drug abuse program or, based on disruptive or negative behavior, may be removed by staff. Removal from the residential program is within the discretion of the [Drug abuse Treatment Coordinator], . . ." Id. at 1241. On October 21, 1994, the BOP revised, reorganized and adopted its proposed regulations regarding the RDAP as section 550.55. 59 Fed. Reg. 53342 (Oct. 21, 1994). Revised section 550.55(c) provided that "[t]he drug abuse treatment coordinator may remove an inmate from the program based upon disruptive or negative behavior." Id. at 53344.

On May 25, 1995, the BOP issued an interim rule with request for comments on amendments to the RDAP "in order to allow for consideration of early release of eligible inmates who complete a residential drug abuse treatment program." 60 Fed. Reg. 27692 (May 25, 1995). In its revisions, the BOP renumbered section 550.55(c) as 550.56(d) and revised that section to read:

> (d) *Withdrawal/expulsion.*
>   (1) An inmate may withdraw voluntarily from the program.
>   (2) The drug abuse treatment coordinator may remove an inmate from the program based upon disruptive behavior related to the program. Ordinarily, staff shall provide the inmate with at least one warning prior to removal. An inmate may not ordinarily be removed immediately without warning unless the inmate, pursuant to an incident report, is found by the DHO to have:
>     (i) Used or possessed alcohol or drugs;
>     (ii) Been violent or threatened violence against staff or another inmate; or
>     (iii) Committed a 100 level prohibited act.

Id. at 27694 (emphasis added). In making this change, the BOP explained its rationale:

> Former paragraph (c) has been redesignated and revised as new paragraph (d) in order to specify more clearly expulsion criteria. Given the significance of the

>     added incentive of possible early release, the Bureau believes these changes are necessary to reduce unnecessary confusion regarding program participation."

Id. at 27693.

On December 22, 2000, after several rounds of public comment, the BOP finalized its interim rules of May 25, 1995. 65 Fed. Reg. 80745 (Dec. 22, 2000). No public comment had been made regarding the BOP's second interim rule regarding residential drug treatment expulsion criteria. See Id. On July 1, 2004, the BOP issued proposed rules regarding residential drug treatment expulsion, which reorganized and clarified the expulsion criteria. 69 Fed. Reg. 39887 (July 1, 2004). On January 14, 2009, the BOP finalized its 2004 proposed rules. 74 Fed. Reg. 1892 (Jan. 14, 2009). In adopting the 2004 proposed rules, the BOP further explained its expulsion criteria:

>     Essentially, inmates will be removed from RDAP for the reasons given in § 550.53(g) because allowing the participation of inmates who commit serious prohibited acts involving the use of alcohol or drugs, violence or threats of violence, escape or attempted escape, or any of the highest severity (100-level series) prohibited acts, would undermine the spirit and intent of the Bureau's drug abuse treatment programs, minimize the seriousness of these offenses, and threaten the safety, security, and good order of the institution.
>
>     Further, the commission of these types of prohibited acts is a violation of the trust given to inmates who are admitted into RDAP. An inmate who is found to have committed any of these prohibited acts demonstrates a propensity to impede or disrupt not only his/her own progress in overcoming a drug abuse problem, but, potentially, the progress of other inmates who are making a true effort to succeed in the program. Providing such consequences for these types of prohibited acts would be greater disincentive to commit such acts.

Id. at 1894.

### E.   Review of the BOP Regulations in light of the APA Requirements

In promulgating the 2009 regulations, the BOP articulated its rationale for excluding inmates with PAC 100-level violations from early release eligibility in the administrative record, and no comments were submitted on the issue. Furthermore, since 1994 the BOP explained that inmates could be removed from the RDAP program for disruptive or negative behavior. It is reasonable to conclude that committing a greatest severity offense is disruptive or negative behavior. While Petitioner contends the rationale proffered is insufficient, a court's review under § 706(2)(A) is narrow and deferential, agency action is presumed to be valid if

1  a reasonable basis for the agency decision is discernable from the administrative record, and
2  a court must not substitute its judgement for that of the agency. This Court finds a reasonable
3  basis for the BOP's action was published in the administrative record and concludes that 28
4  C.F.R. § 550.56(d) is not arbitrary, capricious, an abuse of discretion or otherwise not in
5  accordance with law, and is procedurally valid under § 706(2)(A) of the APA.

6  Based on the foregoing, the Court recommends that the Petition for Writ of Habeas
7  Corpus be DENIED.

8  **V.    RECOMMENDATION**

9  The Court concludes that Petitioner's claims that the BOP has provided no rationale for
10 its policy of removing from RDAP inmates who have been found to have committed a PAC
11 100-level violation, is without merit. Accordingly, the Court recommends that the Petition for
12 Writ of Habeas Corpus be DENIED, with prejudice.

13 These findings and recommendations are submitted to the United States District Court
14 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule
15 304 of the Local Rules of Practice for the United States District Court, Eastern District of
16 California. Within thirty (30) days after being served with a copy, any party may file written
17 objections with the Court and serve a copy on all parties. Such a document should be
18 captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the
19 objections shall be served and filed within fourteen (14) days (plus three days if served by
20 mail) after service of the objections. The Court will then review the Magistrate Judge's ruling
21 pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections
22 within the specified time may waive the right to appeal the District Court's order. Martinez v.
23 Ylst, 951 F.2d 1153 (9th Cir. 1991).

27 IT IS SO ORDERED.
28 Dated:   January 9, 2012           /s/ *Michael J. Seng*

1  UNITED STATES MAGISTRATE JUDGE
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28